**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| FDIC as Receiver for AMTRUST BANK, et al., | 2:10-CV-439 JCM (VCF) |
| Plaintiff(s), | |
| v. | |
| REX H. LEWIS, et al., | |
| Defendant(s). | |

**ORDER**

Presently before the court is plaintiffs Iota Violet, LLC; Iota Coral, LLC; Iota Cinnamon, LLC; Iota Red, LLC; and Iota Royal, LLC's (collectively the "Iota Entities") motion for summary judgment on their claims against defendants. (Doc. # 33).[1] Also before the court is the Iota Entities' motion to dismiss or, alternatively, motion for summary judgment as to, defendants' claims and affirmative defenses relating to the alleged actions of AmTrust Bank and the Iota Entities before the Federal Deposit Insurance Corporation ("FDIC-R") was appointed as receiver for AmTrust Bank and the Iota Entities. (Doc. # 34).[2] Lastly before the court is the FDIC-R's motion to dismiss or, alternatively, motion for summary judgment as to defendants' counterclaims relating to the alleged actions of AmTrust Bank and the Iota Entities before the FDIC was appointed as receiver for

---

[1] The court notes that the amended complaint lists five loan transactions. However, the Iota Entities' motion for summary judgment discusses only four loan transactions, leaving out The Johan loan transaction. Thus, the court construes the Iota Entities' motion for summary judgment on their claims as a motion for partial summary judgment.

[2] Plaintiffs have submitted a declaration of Steven Swartz in support of motions # 33 and # 34. (*See* doc. # 35).

James C. Mahan
U.S. District Judge

1  AmTrust Bank and the Iota Entities. (Doc. # 36).

2        Defendants Rex H. Lewis, Corrales Peters, LLC; Bartlett Sunrise, LLC; Cottongin, LLC;

3  Midway Cornman, LLC; Pebble Cimmaron, LLC; Mesa Verde, LLC; Regena Teepee, LLC; HH

4  INV, LLC; Omega Vista, LLC; and Alpha Vista, LLC (collectively "defendants") failed to file a

5  response to any of these motions.[3]

6  **I.      Factual background**

7        This dispute arises out of four detailed loans agreements that were guaranteed by defendants.[4]

8  While the court finds it unnecessary to belabor the underpinnings of each loan agreement, a similar

9  framework exists amongst the four loan transactions. The framework is as follows.

10        AmTrust Bank extended a loan to an entity. Deed(s) of trust were executed to secure the loan.

11  The loan was also guaranteed by guarantors. Following default by the entity, AmTrust initiated

12  trustee's sales of the properties that secured the deed(s) of trust. Before the trustee's sales took place,

13  AmTrust assigned each deed of trust to the Iota Entities.[5] The properties sold at the trustee's sales

14  were only in partial satisfaction of the principal indebtedness of the loan. Pursuant to the terms of

15  the loan, the deeds of trust, and guarantees, defendants are obligated to pay the Iota Entities by way

16  of a deficiency judgment.

17        The four loans were similarly structured as well. For the purposes of the instant motions, the

18  court simply lists information relevant for each loan.

19        1.      The HH INV loan has the following structure. The borrowers are: HH INV, LLC;

20                    Cottongin, LLC; Bartlett Sunrise, LLC; Midway Cornman, LLC; Peter Midway;

21                    Regena Teepee, LLC; and Russell Stanfield. The guarantors are: Rex Lewis and

22                    Omega Vista, LLC. And the deeds of trust are: HH INC, Cottongin, Bartlett,

23                    Cornman, Peter Midway I, Peter Midway II, Regena, and Stanfield. The deficiency

24

25      [3]  Plaintiffs have also filed a supplemental declaration of Timothy R. Mulliner in support of these motions # 33, # 34, and # 36. (*See* doc. # 40). The declaration outlines plaintiffs' efforts to serve the pending motions on defendants.

26      [4]  The court notes that it is not considering The Jonah loan transaction.

27      [5]  The Iota Entities are limited liability companies formed by AmTrust in connection with the trustee's sales and

28  were wholly owned by AmTrust at the time of those trustee's sales.

**James C. Mahan**
**U.S. District Judge**

1    sought is $44,243,565.

2   2.   The Mesa Verde loan has the following structure. The borrowers are: Mesa Verde,

3       Inc. The guarantors are Rex Lewis and Alpha Vista, LLC. And the deed of trust is:

4       Mesa Verde. The deficiency sought is $2,096,457.

5   3.   The Pebble loan has the following structure. The borrowers are: Pebble Cimmaron,

6       LLC. The guarantors are: Rex Lewis and Omega Vista, LLC. And the deed of trust

7       is: Pebble. The deficiency sought is $825,000.

8   4.   The Corrales loan has the following structure. The borrower is: Corrales Peters, LLC.

9       The guarantors are: Rex Lewis and Omega Vista, LLC. And the deed of trust is:

10      Corrales. The deficiency sought is $205,000.

11   AmTrust and the Iota Entities filed an amended complaint against defendants alleging breach

12 of contract causes of action for five separate loan transactions. (Doc. # 1-5). Plaintiffs, pursuant to

13 NRS § 40.450, *et. seq*., seek recovery of a deficiency balance remaining after the foreclosure of the

14 collateral securing the promissory notes that were in default and upon guarantees that further secured

15 the payment of the deficiencies. Following the filing of the complaint, the FDIC was appointed as

16 receiver of AmTrust.

17   Defendants filed counterclaims for (1) bad faith; (2) negligent misrepresentation; (3)

18 intentional misrepresentation; (4) breach of fiduciary duty; (5) punitive damages; (6) declaratory

19 judgment on accord and satisfaction; (7) economic duress; and (8) control (unequal bargaining

20 power). (Doc. # 1-6, 24-30). Defendants contend that the parties negotiated a "workout" of the

21 deficiency accounts.

22   On March 28, 2012, the court granted withdrawal of defendants counsel. (Doc. # 28). The

23 court ordered defendants to retain new counsel by April 13, 2012. To date, defendants have failed

24 to do so.

25 . . .

26 . . .

27 . . .

28

**James C. Mahan**
**U.S. District Judge**

1    **II.    Motions**

2          **A.       Iota Entities' motion for summary judgment on their claims (doc. # 33)**

3                **I.       Legal standard**

4          Pursuant to Local Rule 7-2(d), an opposing party's failure to file a timely response to any

5    motion constitutes the party's consent to the granting of the motion and is proper grounds for

6    dismissal. A court cannot, however, grant a summary judgment motion merely because it is

7    unopposed, even where its local rules might permit it. *Henry v. Gill Indus., Inc.,* 983 F.2d 943, 949-

8    50 (9th Cir. 1993); *see also Martinez v. Stanford*, 323 F.3d 1178, 1182 (9th Cir. 2003) (a district

9    court cannot grant a motion for summary judgment based merely on the fact that the opposing party

10   failed to file an opposition). Even without an opposition, the court must apply standards consistent

11   with Fed.R.Civ.P. 56, determining if the moving party's motion demonstrates that there is no

12   genuine issue of material fact and judgment is appropriate as a matter of law. *Id.* at 950. *See also*

13   *Clarendon Am. Ins. Co. v. Jai Thai Enterprises, LLC*, 625 F. Supp. 2d 1099, 1103 (W.D. Wash.

14   2009).[6]

15          The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings,

16   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

17   show that "there is no genuine issue as to any material fact and that the movant is entitled to a

18   judgment as a matter of law." FED. R. CIV. P. 56(a). A principal purpose of summary judgment is "to

19   isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

20   (1986).

21          In determining summary judgment, a court applies a burden-shifting analysis. "When the

22   party moving for summary judgment would bear the burden of proof at trial, it must come forward

23   with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

24   In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

25   of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213

26   _____

27          [6] "[S]mmary judgment cannot be granted by default, even if there is a complete failure to respond to the
     motion." Fed.R.Civ.P. 56, 2010 cmt. to subdivision (e).The Court may only grant summary judgment if "the motion and

28   supporting materials ... show that the movant is entitled to it." Fed.R.Civ.P. 56(e).

**James C. Mahan**
**U.S. District Judge**                                          - 4 -

1   F.3d 474, 480 (9th Cir. 2000) (citations omitted).

2          In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

3   moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

4   element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to

5   make a showing sufficient to establish an element essential to that party's case on which that party

6   will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails

7   to meet its initial burden, summary judgment must be denied and the court need not consider the

8   nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

9          If the moving party satisfies its initial burden, the burden then shifts to the opposing party

10  to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith

11  Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing

12  party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the

13  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions

14  of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th

15  Cir. 1987).

16         Summary judgment is appropriate when the contract terms are clear and unambiguous. *See

17  United States v. King Features Entertainment, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Int'l

18  Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1406 (9th Cir. 1985). Interpretation of

19  the contract, including whether it is ambiguous, is a matter of law. *Beck Park Apts. v. United States

20  Dep't of Housing*, 695 F.2d 366, 369 (9th Cir. 1982). In Nevada, a contract provision "is ambiguous

21  if it is reasonably susceptible to more than one interpretation." *See Magrave v. Doormat Properties,

22  Inc.*, 110 Nev. 824, 827 (1994).

23         **ii.      Discussion**

24         Here, there is no dispute that the loans were made to defendants and that defendants breached

25  their repayment obligations under those loans. The terms of the loan agreements upon which the Iota

26  Entities rely are also undisputed. Further, there is no dispute that the collateral pledged as security

27  for those loans was sold at trustee's sales in partial satisfaction of the indebtedness owed to the Iota

28

James C. Mahan
U.S. District Judge

- 5 -

1   Entities.

2          The Iota Entities have submitted properly authenticated evidence to demonstrate the absence

3   of any genuine issue of material fact for trial. *Celotex Corp.*, 477 U.S. at 323; *see Orr v. Bank of*

4   *America*, 285 F.3d 764 (9th Cir. 2002) (articulating the standard for authentication of evidence on

5   a motion for summary judgment). Since the Iota Entities have met their initial burden, the burden

6   shifts to defendants to establish that a genuine issue of material fact exists. *See Matsushita Elec.*

7   *Indus. Co.*, 475 U.S. at 586. However, defendants forwent an opportunity to demonstrate that a

8   factual dispute exists.

9          Thus, the court finds that summary judgment in favor of plaintiffs appropriate. As such, the

10  Iota Entities are entitled to deficiency judgments in the amount of the remaining indebtedness due

11  and owing pursuant to NRS § 40.450, *et seq*.

12      **B.      Iota Entities' motion to dismiss or, alternatively, motion for summary judgment**

13              **as to, defendants' counterclaims (doc. # 34) & FDIC-R's motion to dismiss or,**

14              **alternatively, motion for summary judgment as to defendants' counterclaims**

15              **(doc. # 36)**

16         The court will convert a motion to dismiss into a motion for summary judgment if the parties

17  submit matters outside the pleadings and the court relies on the material in making its decision.

18  *North Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 582 (9th Cir. 1983); Fed.R.Civ.P. 12(d).

19  Here, the Iota Entities and the FDIC-R have presented evidence outside of the pleadings. However,

20  the court need not rely on this evidence in deciding these unopposed motions. As such, the court

21  construes these motions (docs. # 34 & 36) as motions to dismiss.

22         "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted

23  as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

24  1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Where a

25  complaint pleads facts that are 'merely consistent' with a defendant's liability, it 'stops short of the

26  line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Bell Atlantic*, 550 U.S.

27  at 557). However, where there are well pled factual allegations, the court should assume their

28

**James C. Mahan**
**U.S. District Judge**

                                    - 6 -

1    veracity and determine if they give rise to relief. *Id.* at 1950.

2    Pursuant to Local Rule 7-2(b), an opposing party's failure to file a timely response to any

3    motion constitutes the party's consent to the granting of the motion and is proper grounds for

4    dismissal. *U.S. v. Warren*, 601 F.2d 471, 474 (9th Cir. 1979). However, prior to dismissal, the

5    district court is required to weigh several factors: "(1) the public's interest in expeditious resolution

6    of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants;

7    (4) the public policy favoring disposition of cases of their merits; and (5) the availability of less

8    drastic sanctions." *Ghazali v. Moran*, 46 F.3d 52, 53 (9th Cir. 1995) (citing *Henderson v. Duncan*,

9    779 F.2d 1421, 1423 (9th Cir. 1986)).

10                                    **ii.      Discussion**

11   Here, defendants have failed to comply with a court order requiring defendants to obtain

12   counsel (doc. # 30),[7] and have effectively evaded manual service of the instant motions pending

13   before the court (doc. # 40). Defendants should not stand to benefit from their disregard of this

14   court's order and evasive behavior.

15   In light of defendants' failure to respond and weighing the factors identified in

16   *Ghazali*, the court finds dismissal of the counterclaims as to the Iota Entities and the FDIC-R

17   appropriate. Dismissal of defendants' counterclaims is without prejudice.

18   **IV.    Conclusion**

19   Accordingly,

20   IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the Iota Entities' motion

21   for summary judgment on their claims against defendants (doc. # 33) be, and the same hereby is,

22   GRANTED.[8] Plaintiffs are to prepare an appropriate judgment consistent with this order if they do

23   not intend to seek a final disposition on The Jonah loan transaction.

24

25

26   [7] A corporation cannot appear except through counsel. *U.S. v. High Country Broadcasting, Co., Inc.*, 3 F.3d 1244, 1245 (th Cir. 1993); *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993).

27

28   [8]  The court reminds plaintiffs that the court has construed their motion for summary judgment as a motion for partial summary judgment.

James C. Mahan
U.S. District Judge

1    IT IS FURTHER ORDERED that the Iota Entities' motion to dismiss or, alternatively,

2  motion for summary judgment as to, defendants' claims and affirmative defenses relating to the

3  alleged actions of AmTrust Bank and the Iota Entities before the FDIC-R was appointed as receiver

4  for AmTrust Bank and  the Iota Entities (doc. # 34) be, and the same hereby is, GRANTED.

5  Defendants' counterclaims are dismissed without prejudice.

6    IT IS FURTHER ORDERED that the FDIC-R's motion to dismiss or, alternatively, motion

7  for summary judgment as to defendants' counterclaims relating to the alleged actions of AmTrust

8  Bank and the Iota Entities before the FDIC was appointed as receiver for AmTrust Bank and

9  plaintiffs (doc. # 36) be, and the same hereby is, GRANTED. Defendants' counterclaims are

10  dismissed without prejudice.

11    DATED November 28, 2012.

12

13  _____

**UNITED STATES DISTRICT JUDGE**

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**James C. Mahan**
**U.S. District Judge**

- 8 -