**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\*\*\*

FEDERAL DEPOSIT INSURANCE
CORPORATION, *et al.*,

                  Plaintiffs,

vs.

REX H. LEWIS, *et al.*,

                  Defendants.

Case No. 2:10–cv–439–JCM–VCF

**ORDER**

      This matter involves a post-judgment execution proceeding against Rex H. Lewis. Before the court is judgment creditor Iota Violet, LLC, *et al.*'s Motion to Compel (#81[1]). Lewis opposed (#84) and Iota Violet, LLC replied (#86). Also before the court is Lewis' Counter Motion to Limit the Scope of his Judgment Debtor Exam (#84). For the reasons stated below, Iota Violet, LLC's Motion to Compel is granted and Lewis' Counter Motion is denied.

**BACKGROUND**

      In 2008, Nevada's real estate market crashed. (Pl.'s Mot. to Compel (#81) at 3:23). This led to a series of unfortunate events for Rex H. Lewis, a homebuilder and developer, who personally guaranteed five commercial loans in the amount of $59 million. (*Id.* at 3:4, 19–20).

      When the market crashed, the borrowers defaulted and the banks foreclosed. (*Id.* at 3:23–24). When the foreclosure sales were complete, the debts were not repaid in full. (*See id.* at 3:26–28). Then, the banks commenced this deficiency judgment action against Lewis as guarantor. (*Id.*) Lewis was served and initially defended against the bank's claims, but soon gave up: his attorney withdrew, the

---

[1] Parenthetical citations refer to the court's docket.

banks moved for summary judgment, Lewis failed to oppose, and judgment was entered against Lewis in the amount of $66,089,661.52. (*See id.* at 5:4–7); (Docs. #55, #57).

Now, the judgment creditors are searching for Lewis' assets in order to satisfy their judgment. They propounded post-judgment written discovery requests, but Lewis evaded service. (Doc. #81 at 5:17). On June 30, 3014, a process server went to Lewis' house. A man resembling Lewis answered the front door, identified himself as "Randy Peterson," and stated that Lewis no longer resided at the property. (*Id.* at 5:17–20). Later, the judgment creditors attempted to serve written discovery requests on a guard at the front gate of Lewis' neighborhood. (*Id.* at 5:21–22). It did not work. Then, the judgment creditors found Lewis while he was going for a walk. (*Id.* at 5:22–23). When the process server approached, Lewis ran away. (*Id.* at 5:22–25). A chase ensued and the discovery requests were left on Lewis' front porch. (*Id.*)

Lewis eventually acquiesced to the judgment creditors' demands, retained counsel, and sat for a deposition. (*Id.* at 5–6). But, Lewis remembered nothing. (*Id.* at 6:22–24). He did not know who owns his house. He did not know who paid his property taxes. He did not know anything about the source of his income. In fact, he stated, "I don't know" 175 times, "I don't believe so" 250 times, "I don't believe I do" 75 times, "I don't recall 20 times," and I don't believe I know" 60 times. (*Id.* at 6–7).

Additionally, Lewis believes that the banks owe him money. He asserts that between 2007 and 2009—(i.e., before judgment was entered against him)—the loan agreements were modified. According to Lewis' counsel, "as of October 2009, not only did Lewis not believe he was personally liable on any guaranty, but he [also believed he] was entitled to recover substantial sums [from] the banks." (Def.'s Opp'n (#84) at 4:18–22).

This has frustrated the judgment creditors. Unlike typical post-judgment proceedings, in which the judgment creditor subpoenas a third-party bank to locate the judgment debtor's assets, here the banks

2

require Lewis' testimony. Lewis has allegedly been hiding assets for years. The judgment creditors contend that Lewis conveyed millions of dollars in property to his children, transferred money to offshore bank accounts, and laundered funds through various shell corporations. But, Lewis has either forgotten about the transfers or refuses to discuss them if they occurred before September 5, 2010, a date Lewis' arbitrarily selected. (Doc. #81 at 6:20–22).

This prompted the instant Motion to Compel. Thirteen written discovery requests are in controversy. Each concern asserts, which the judgment creditors hope to use to satisfy their judgment. This order follows.

### LEGAL STANDARD

Federal Rule of Civil Procedure 69 governs discovery in post-judgment execution proceedings. In pertinent part, it states that "[i]n aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person—including the judgment debtor—as provided in these rules or by the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(2).

Discovery under Rule 69 is "quite permissive." *Republic of Argentina v. NML Capital, Ltd.*, 134 S. Ct. 2250, 2254 (2014). It incorporates Rule 26, which provides for two forms of discovery: party-controlled discovery and court-controlled discovery. The first sentence of Rule 26(b)(1) governs party-controlled discovery. It provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The second sentence of Rule 26(b)(1) governs court-controlled discovery. It provides that "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."

These provisions provide for "[l]iberal discovery." *Seattle Times, Co. v. Rinehart*, 467 U.S. 20, 34 (1984). Liberal discovery serves "the integrity and fairness of the judicial process by promoting the

search for the truth," *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir. 1993), and permits parties to "fish" for evidence. FED. R. CIV. P. 26(b), Advisory Comm. Notes (1946) (citation omitted) ("[T]he Rules . . . permit 'fishing' for evidence as they should."); *Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("[The] discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case.").

Where, as here, a party resists discovery, the requesting party may file a motion to compel. The party resisting discovery carries the heavy burden of showing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). The resisting party must show that the discovery request is overly broad, unduly burdensome, irrelevant or disproportional in light of "the issues at stake." FED. R. CIV. P. 26(b)(2)(C); *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 472–73 (9th Cir. 1992). To meet this burden, the resisting party must specifically detail the reasons why each request is improper. *Beckman, Indus.*, 966 F.2d at 476 ("Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy the Rule 26(c) test."). Boilerplate, generalized objections are inadequate, tantamount to making no objection at all, and will be disregarded by the court. *Id.*

The court has broad discretion in controlling discovery, *see Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988), and in determining whether discovery is burdensome or oppressive. *Beckman, Indus.*, 966 F.2d at 476. The court may fashion any order which justice requires to protect a party or person from undue burden, oppression, or expense. *United States v. Columbia Board. Sys., Inc.*, 666 F.2d 364, 369 (9th Cir.1982) *cert. denied*, 457 U.S. 1118 (1982).

**DISCUSSION**

4

Lewis, who bears the burden of demonstrating why discovery should be denied, *see Blankenship*, 519 F.2d at 429, makes a variety arguments in opposition to the judgment creditors' Motion to Compel. As discussed below, the court is unpersuaded by Lewis' arguments.

Lewis' primary basis for resisting discovery—(*viz.*, that the judgment creditors cannot seek discovery regarding transfers before September 5, 2010)—is mistaken. He contends that the Uniform Fraudulent Transfers Act, NEV. REV. STAT. § 112.230, limits discovery to the last four years. (Def.'s Opp'n (#84) at 7:16–24). It does not. The Act provides that "a claim for relief with respect to a fraudulent transfer or obligation . . . is extinguished unless action is brought . . . within 4 years after the transfer was made . . . [or] within 1 year after the transfer or obligation was or could reasonably have been discovered by the claimant." NEV. REV. STAT. § 112.230(1). Here, the judgment creditors are attempting to discover fraudulent transfers by Lewis. Until fraudulent transfers are discovered or "could reasonably have been discovered," the statute of limitations does not begin to run.

Therefore, it is premature to litigate the Act's statute of limitations.[2] The parties are in the midst of post-judgment discovery. Post-judgment discovery is "quite permissive." *NML Capital, Ltd.*, 134 S. Ct. at 2254. For good cause, a judgment creditor may obtain discovery on "any matter relevant to the subject matter involved in the action." *See* FED. R. CIV. P. 69 (incorporating Rule 26(b)(1)). The subject matter of this action involves a series of commercial loans, which came into existence as early as June 19, 2003. (*See, e.g.*, Compl. (#1-2) at ¶¶ 18, 20). Whether Lewis intended to hinder, delay, or defraud lenders when Lewis obtained the loans is in controversy. Accordingly, Rules 69 and 26(b)(1) permit the

---

[2] The Supreme Court rejected a similar argument in *NML Capital, Ltd.*, 134 S. Ct. at 2257–58. The court stated, "Argentina maintains that, if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property. But the reason for these subpoenas is that NML does not yet know what property Argentina has and where it is, let alone whether it is executable under the relevant law." *Id.*

judgment creditors to obtain discovery regarding transfers that occurred immediately after the loans—(i.e., the subject matter of the action)—were executed.[3]

Lewis' second basis for resisting discovery concerns his mental state. He argues that the judgment creditors may not obtain discovery regarding certain transfers because (1) "as of October 2009 . . . Lewis did not believe he was personally liable on any guaranty" and (2) the Uniform Fraudulent Transfers Act requires intent to hinder, delay, or defraud. (Def.'s Opp'n (#84) at 4:18–22, 9:10–17). This argument fails as a matter of law. The parties are conducting discovery, not litigating the merits of the Act's applicability to individual transfers. A party cannot resist discovery by asserting that an element of a claim will fail. *See NML Capital, Ltd.*, 134 S. Ct. at 2257–58. Even where it appears that an element of a claim will fail, parties "may obtain discovery regarding any nonprivileged matter that is relevant" to the elements of that claim. FED. R. CIV. P. 26(b)(1). Therefore, the judgment creditors are entitled to discovery regarding Lewis' intent and the circumstances surrounding his transfers.

Lewis' remaining bases for resisting discovery are similarly unpersuasive. He contends that various requests are overbroad because the instructions define "you or your" to include Lewis and "his agents, employees, accountants, counsel, trustees, and any other person under his direction," which are defined as including "natural persons, corporations, partnerships, limited liability companies, joint ventures, trusts, and any other entity recognized by law of whatever type, whatever from, and however nominated." (Doc. #84 at 19:10–16). This definition is expansive; but the gist is simple: the judgment creditors want to know what assets Lewis has and whether Lewis or some person or entity acting on his behalf transferred his asserts elsewhere.

---

[3] In fact, if the judgment creditors have an adequate factual basis for suspecting that Lewis' planned to defraud the banks before the loans were executed, then Rule 26(b)(1) would permit the judgment creditors to inquire into matters before June 19, 2003.

Lewis argues that "[b]y the time this [definition] is dissected and trisected," the interrogatories "probably have discrete subsets of questions numbering in the thousands, which by itself warrants the denial of this motion." (*Id.* at 19:16–19). This argument misses the mark. Discovery is liberal. *Rhinehart*, 467 U.S. at 34. It is designed to promote the "search for the truth." *Shoen*, 5 F.3d at 1292. While the party requesting discovery must comply with the limitations set by the rules, the responding party cannot, like Lewis, nitpick definitions to avoid giving a discovery request its plain and commonsensical meaning.

For instance, the judgment creditors' thirteenth interrogatory states: "Identify each asset you own which is individually worth $5,000 or more." (Doc. #84 at 18:5–8). Lewis objected, stating that "the definition of 'you' and 'your' [is] overbroad and outside the scope of discovery permitted by [Rule] 26." (*Id.* at 13:21–22). The interrogatory is not ambiguous, overbroad, or unduly burdensome and the court will not entertain Lewis' arguments in order to make the request appear so. The interrogatory is written in order to locate assets currently held by third-party shell corporations, which Lewis may have fraudulently transferred beyond his personal control.

Information related to these transfers is discoverable and there is a sufficient basis to suspect that Lewis' has fraudulently transferred assets beyond his personal control. Lewis was asked for documents related to his bank account. In response, "he testified he had no bank account." (*Id.* at 25:17). Similarly, Lewis was asked for documents related to contributions to or distributions from other accounts. Again, he said that no documents exist because he own no accounts whatsoever. (*Id.* at 19:23–24). Lewis refused to provide a substantive answer to interrogatory twenty four for similar reasons. The interrogatory asks Lewis to describe his interest and role in Five Springs, LLC and Veritas Management, LLC. Lewis answered "none," and now asserts "[t]he fact that Mr. Lewis and his wife live in this house [, which is owned by Five Springs, LLC and Veritas Management, LLC] does not support the inference

7

1   suggested that he does in fact have a role or ownership interest in Five Springs, LLC or Veritas

2   Management, LLC." (*Id.* at 22:17–22).

3        These answers are not credible. Lewis' continued presence in the home after its transfer provides

4   an ample basis for inferring that Lewis may have an interest in Five Springs, LLC or Veritas

5   Management, LLC. As this court recently stated,

6        In the amount of time it takes a jury to return a verdict, a standard wireless device enables
        a prospective judgment debtor to incorporate shell companies in far-off lands and transfer
7        their assets beyond discovery's reach—all while sitting at counsel's table. [This]
        [c]onduct [] 'exalt[s] artifice above reality,' *see Abramski*, 134 S. Ct. at 2270, [and does]
8        not free a [person] from the burdens of complying with an otherwise valid [discovery
        request].
9

10  *NML Capital Ltd. v. Republic of Argentina*, No. 2:14–cv–492–RFB–VCF, 2014 WL 3898021, at *12

11  (D. Nev. Aug. 11, 2014). The court will not countenance Lewis' attempts to resist discovery by claiming

12  ignorance of the basic details of his life. If Lewis cannot produce responsive documents or substantive

13  answers, then the judgment creditors may propound third-party discovery on the corporations or move

14  the court to order Lewis' counsel to certify under Rule 26(g) what, if any, steps Lewis and his counsel

15  took to comply with their discovery obligations. *See NML Capital Ltd.*, 2014 WL 3898021, at *5–13.

16       ACCORDINGLY, and for good cause shown,

17       IT IS ORDERED that Iota Violet, LLC's Motion to Compel is GRANTED.

18       IT IS FURTHER ORDERED that Lewis must provide substantive answers, responsive

19  documents, and a Rule 26(g) certification in response to Iota Violet's discovery requests by January 16,

20  2015.

21

22       IT IS FURTHER ORDERED that Iota Violet, LLC's request for joint and severable attorney's

23  fees against Lewis and his counsel is DENIED without prejudice. The court will entertain subsequent

24  motions for sanctions in the event that Lewis continues to obstruct discovery.

25

IT IS FURTHER ORDERED that Rex H. Lewis' Motion to Limit the Scope of his Judgment Debtor Exam (#84) is DENIED.

IT IS SO ORDERED.

DATED this 18th day of December, 2014.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE