# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA
### ***

FEDERAL DEPOSIT INSURANCE
CORPORATION, *et al*.,

                    Plaintiffs,

vs.

REX H. LEWIS, *et al*.,

                    Defendants.

Case No. 2:10–cv–439–JCM–VCF

**ORDER AND
REPORT & RECOMMENDATION**

    This matter involves a post-judgment execution proceeding against Rex H. Lewis. Eight motions are before the court: (1) Lewis' Motion to Withdraw Funds from his IRA (#89); (2) the judgment creditors' Motion to Hold Rex Lewis in Contempt (#91); (3) the judgment creditors' Motion to Declare Documents Discoverable (#100); (4) the judgment creditors' Motion to Declare Lewis' Home Subject to Execution (#108); (5) the judgment creditors' Motion to Compel (#110); (6) Lewis' Motion for Relief from Judgment (#125); (7) Non-Party Christine Schwab's Motion for a Protective Order (#127); and the judgment creditors' *Ex Parte* Motion for Service (#136).

## I. OVERVIEW

    Judgment has been entered in this case. The judgment creditors are conducting postjudgment discovery under Federal Rule of Civil Procedure 69. As stated by judgment debtor Lewis' counsel during oral argument, at one time in the not too distant past, Lewis' net worth exceeded $100 million. Now, Lewis claims that he has no assets, other than the right to occupy the home he lives in, rent free with all expenses paid. He further claims that his home is owned by two Limited Liability Companies, which in turn are controlled by an off-shore trust, over which Lewis has no control.

During oral argument, Lewis' counsel posited that before assets formerly owned by Lewis can be executed on, the judgment creditors must prove that Lewis gave up ownership of the assets through fraudulent transfers. This issue is not material to the disputes currently before the court. At this stage, the judgment creditors are entitled to discover what happened to the money and property that at one time made up Lewis' considerable net worth. The discovery at issue seeks information necessary to trace these assets. Lewis has not responded to the discovery as required. The court does not believe Lewis' claims that he lacks the knowledge required to respond to the discovery and that he does not have the ability to arrange for others, who have that knowledge, to provide the information required.

Also during oral argument, Lewis' counsel produced a written waiver of attorney client privilege, *see* (Doc. #142), with regard to the attorney currently responsible for the operation of the offshore trust, and who has information related to tracing the assets which make up that trust. According to counsel, going forward, that attorney, F.R. Jenkins, will cooperate with the judgment creditors' in providing the information they seek.

Discovery will continue until the judgment creditors receive the information to which they are entitled. An initial level of sanctions will be imposed by this order. Further, more stringent sanctions, up to a recommendation that Lewis be held in contempt, will follow, if Lewis continues to intentionally frustrate the judgment creditors' reasonable and proper efforts to obtain information about the assets the judgment debtors' once owned.

## II. FACTUAL BACKGROUND

In 2008, Nevada's real estate market crashed. This led to a series of unfortunate events for Rex H. Lewis, a homebuilder and developer, who personally guaranteed five commercial loans in the amount of $70 million. When the market crashed, the borrowers defaulted and the banks foreclosed. When the foreclosure sales were complete, the debts were not repaid in full. When the banks commenced this

deficiency judgment action against Lewis as guarantor, he was served with a summons and complaint and initially defended but later failed to oppose the bank's motion for summary judgment. On April 25, 2014, the court entered judgment against Lewis and his various companies, jointly and severally, for $66,089,661.52.

Now, the judgment creditors are attempting to obtain discovery in connection with Lewis' assets in order to execute on their judgment. In response, Lewis has evaded service, forgotten basic details regarding his financial life, and alleged that the judgment creditors perpetrated a fraud upon the court to obtain judgment against him. These circumstances led to the seven motions before the court. Because Lewis questions the validity of the judgment against him, the court begins by reviewing the facts underlying the judgment.

A.      **Lewis Guarantees $70 million in Company Debt**

Between 2003 and 2007, AmTrust Bank (formerly Ohio Savings Bank) made five commercial loans to companies owned by Rex Lewis. First, in 2003, HH INV LLC, borrowed $9,500,000. The loan was later increased to $35,730,000 and then to $70,545,000. Second, in 2004, Mesa Verde Inc. borrowed $16,350,000. The loan was later increased to $18,150,000. Third, in 2006, Jonah LLC borrowed $6,175,000. The loan was later increased to $10,657,000. Fourth, in 2007, Pebble Cimarron LLC borrowed $1,560,000. Finally, in 2007, Corrales Peters LLC borrowed $560,000.

Each of these five loans were guaranteed by either Omega Vista LLC, Lewis' home-building company, or Alpha Vista LLC, his land-development company. Omega Vista LLC guaranteed the HH INV, Pebble Cimarron, Corrales Peters, and Jonah loans. And Alpha Vista LLC guaranteed the Mesa Verde loan. In 2004, Lewis executed a personal guaranty (i.e., the "Global Guaranty") for Alpha and Omega's debts. If Alpha failed to maintain a balance sheet value equal to at least 17% of its guaranteed obligations for three consecutive months, Lewis would become liable for Alpha's debts. Similarly, if

Omega failed to maintain a balance sheet value equal to at least 22% of its guaranteed obligations for three consecutive months, Lewis would become liable for Omega's debts.

On October 16, 2007, AmTrust and HH INV LCC executed a Modification Agreement. The Modification Agreement extended the maturity date of the HH INV loan for twelve months and increased the balance of the  HH INV loan from $35,730,000 to $70,545,000 by combining the HH INV loan with two other loans and adding $11,365,000 in new borrowing capacity to the loan.

The Modification Agreement also contained a Consent and Agreement of Guarantors provision. Under this provision, Omega consented to modifying the HH INV loan and agreed that its guaranty of the HH INV loan applies to the increased balance of $70,545,000. The Modification Agreement also contained a provision stating that the Supplemental Guaranty "shall not affect any liability which Rex H. Lewis may have under any prior limited guaranties provided in connection with the Loan" (i.e., the HH INV loan). *See* (Doc. #135-1 at p. 5, § 2.7).[1]

On the same day, AmTrust and Lewis executed a Supplemental Guaranty (a/k/a the "2007 Lewis Guaranty").[2] Under the terms of the Supplemental Guaranty, Lewis personally guaranteed the $11,365,000 in new borrowing capacity of the HH INV loan. The Supplemental Guaranty also contained a provision reducing Lewis' liability for the $11,365,000 if HH INV LLC made payments towards the loan. Under the terms of this provision, all principal payments by HH INV LLC would effected a dollar-for-dollar reduction in the amount of Lewis' guarantee. If HH INV LLC repaid one million dollars towards the principal of the loan, then Lewis' personal guaranty would be reduced to $10,365,000.

The Supplemental Guaranty also contained an integration clause, stating that "[t]his Guaranty, together with the Note, Agreement, the Deeds of Trust, and all other agreements collateral thereto,

---

[1] Rex Lewis did not sign the Modification Agreement in his personal capacity.
[2] HH INV LLC did not sign the Supplemental Guaranty.

4

constitutes the entire agreement and understanding and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof." *See* (Doc. #35-16 at p. 7, § 3.6).

Nevada's real estate market crashed one year later. Lewis' companies defaulted on their loans; AmTrust assigned its interest in four of the loans, including the HH INV loan, to the Iota Plaintiffs; the encumbered properties were sold; deficiencies remained; and AmTrust and the Iota Plaintiffs commenced this action in state court on August 3, 2009.

Thereafter, the Federal Insurance Deposit Corporation was appointed as AmTrust's receiver and it removed the action to federal court.[3] On March 9, 2012, Lewis stopped defending against the Plaintiffs' claims and his attorney withdrew. (Doc. #30). On July 30, 2012, the Iota Plaintiffs moved for summary judgment. (Doc. #33). On November 28, 2012, the Honorable James C. Mahan, U.S. District Judge, granted the motion, which Lewis failed to oppose. (Doc. #41). And, on April 25, 2014, judgment was entered against Lewis and his companies jointly and severally in the amount of $66,089,661.52. *See* (Am. J. (#51) at ¶ 2).

Shortly thereafter, Judge Mahan enjoined Lewis "from transferring any asset he currently owns which is worth $5,000 or more" and "from causing any limited liability company, trust, partnership, retirement account, corporation, or any other legal entity under his control from transferring any asset worth $5,000 or more." *See* (Doc. #65). The injunction requires Lewis to seek leave of court before engaging in any such transfers.

---

[3] When the FDIC was appointed as AmTrust's receiver, the Jonah loan was sold to RecoverEdge. As a result, the Iota Plaintiffs own four of the original AmTrust loans: the HH INV, Mesa Verde, Pebble Cimarron, and Corrales Peters loans.

### B. <u>Postjudgment Proceedings</u>

After judgment was entered, the Iota Plaintiffs (a/k/a judgement creditors) began searching for Lewis' assets and propounding postjudgment discovery requests on him. On June 30, 2014, a process server went to Lewis' house. A man resembling Lewis answered the front door, identified himself as "Randy Peterson," and stated that Lewis no longer resided at the property. The process server later attempted to serve the discovery requests on a guard at the front gate of Lewis' neighborhood. When that failed, the process server found Lewis while he was going for a walk. When the process server approached, Lewis ran. A chase ensued and the discovery requests were left on Lewis' front porch.

Lewis eventually acquiesced to the judgment creditors' demands, retained counsel, and sat for a deposition; but Lewis remembered nothing. He did not know who owns the house in which he has lived since 1988. He did not know who paid his property taxes. He did not know anything about the source of his income. In fact, Lewis stated, "I don't know" 175 times, "I don't believe so" 250 times, "I don't believe I do" 75 times, "I don't recall 20 times," and "I don't believe I know" 60 times.[4]

This has frustrated the judgment's execution. In a typical postjudgment proceedings, a judgment creditor subpoenas a third-party to locate the judgment debtor's assets. Here, the judgment creditors contend that Lewis conveyed millions of dollars in property to his children, transferred money to offshore trusts, and laundered funds through various corporations. But Lewis has either forgotten about the transfers or refuses to discuss them if they occurred before September 5, 2010—a date Lewis' arbitrarily selected. Lewis also refuses to provide information regarding the account balance in his various individual

---

[4] However, during the court's May 19, 2015, hearing Lewis's attorney stated that Lewis was able to recall details about loan document that he has signed years in the past. The only details Lewis was able to recall supported his position that he is not liable for any debt.

6

retirement accounts. He contends that he cannot provide the judgment creditors with this information because the only way to determine the balance is by calling a banker in Ohio. (Mins. Proceedings #141).

On December 18, 2014, the court ordered Lewis to provide substantive answers and responsive documents to the judgment creditors' discovery requests. Lewis complied with the court's order with regard to three requests but provided evasive answers with regard to the remaining ten requests. For instance, in response to Interrogatory 15, which sought information regarding Lewis' personal asset transfers, Lewis provided an incomplete list of companies with whom he transacted and stated, "[i]n any event[,] being a land and residential developer[,] there were literally hundreds if not thousands of transfers of these real property assets during the time frame in question and I have no records of any of these transactions." (Doc. #95 at 8:4–6). When ordered to provide a substantive response, Lewis dodged the question again, stating:

> In 2008 and in January 2009, I took some of my assets <u>unrelated</u> to the home building and land development business and transferred them to the Caribbean Trust Company Ltd. All documents pertaining to assets transferred to this trust or trust documents or otherwise will have to be secured to plaintiffs from the Trustee.[5]

(*Id*. at 8:6–9) (emphasis original).

Lewis also continued to maintain ignorance about the basic facts of his business activities. Interrogatories 33 and 34 ask Lewis to identify companies with which he was involved. He answered: "I have learned from the Secretary of State website that I held the following positions with the following entities: [list omitted]." (*Id*. at 8, 11). Lewis also continues to claim to know nothing "regarding utilities, etc. pertaining to the house in which he lives," (*id*. at 15:11–12), and continues to claim to have no

---

[5] During the court's May 19, 2015 hearing, Lewis produced an "absolute and unconditional" waiver of his attorney client privilege with the Trustee, F.R. Jenkins, "for all purposes and for all matters." *See* (Mins. Proceedings #141); (Doc. #142 at Ex. 1).

brokerage accounts, life insurance, bank accounts, and no financial statements regarding these accounts. (*Id*. at 16:5).

### III. DISCUSSION

The parties' motions present five questions: (1) whether Lewis should be relieved from the court's judgment (Doc. #125); (2) whether Lewis should be permitted to withdraw up to $15,000.00 per month to pay his attorney (Doc. #89); (3) whether the third-party accountants should be compelled to produce Lewis' financial information (Docs. #100, #110, #127); (4) whether the court may declare Lewis' home subject to execution (Doc. #108), and (5) whether Lewis should be held in contempt (Doc. #91). [6] Each question is addressed below.

### A.     **Whether Lewis should be Relieved from the Court's Judgment?**

Lewis contends that he should be relieved from judgment because the Supplemental Guaranty (a/k/a the "2007 Lewis Guaranty") limited his liability on the HH INV loan to $11,365,000 and the foreclosure sales generated $23,905,000, which reduced his liability to zero under the Supplemental Guaranty's dollar-for-dollar reduction provision.[7] The court's analysis begins with the governing law.

---

[6] The judgment creditors also filed an *Ex Parte* Motion for Service (#136). During the court's May 19, 2015, hearing, the court ordered the parties to meet and confer on the issues raised by the motion and file simultaneous briefs within one week if the dispute could not be resolved without court action. On May 27, 2015, the parties filed a status report stating that the issues raised in the motion have been resolved. Therefore, the court denies the judgment creditors' *Ex Parte* Motion for Service (#136) as moot.

[7] Stated differently, Lewis asks the court to remove his name from paragraph two of the amendment judgment. This paragraph currently reads: "That Iota Violet, LLC and Iota Royal, LLC, jointly and severally, recover from HH INV, LLC, Bartlett Sunrise, LLC; Cottongin, LLC; Midway Cornman, LLC; Regena Teepee, LLC, Rex Lewis and Omega Vista, LLC, jointly and severally, the amount of $55,176,574.16. Post-judgment interest shall accrue on this amount at the applicable rate under 28 U.S.C. § 1961 until paid in full." (Am. J. (#51) at ¶ 2). Lewis does not move the court to amend paragraphs 3, 4, or 5, which respectively hold Lewis and his LLCs jointly and severally liable for $2,614,529.63, $1,028,865.41, and $255,657.47.

1.      <u>Legal Standard</u>

Federal Rule of Civil Procedure 60(b) governs relief from a judgment or order. It provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding" on account of, *inter alia*, "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief." FED. R. CIV. P. 60(b)(1), (6).

If a movant seeks relief under Rule 60(b)(1), a motion must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." FED. R. CIV. P. 60(c)(1). If a movant seeks relief under Rule 60(b)(6), a motion must be "made within a reasonable time." *Id*. What constitutes reasonable time depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties. *Lemoge v. United States*, 587 F.3d 1188, 1196 (9th Cir. 2009) (citing *Ashford v. Steuari*, 657 F.2d 1053, 1055 (9th Cir. 1981)).

A Rule 60 motion "is not an avenue to re-litigate the same issues and arguments upon which the court has already ruled." *Brown v. Kinross Gold, U.S.A.*, 378 F. Supp. 2d 1280, 1288 (D. Nev. 2005); *Merozoite v. Thorp*, 52 F.3d 252, 255 (9th Cir. 1995). The Ninth Circuit has distilled the grounds for reconsideration into three primary categories: (1) newly discovered evidence; (2) the need to correct clear error or prevent manifest injustice; and (3) an intervening change in controlling law. *School Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). "A party cannot have relief under this rule merely because he or she is unhappy with the judgment." *Khan v. Fasano*, 194 F. Supp. 2d 1134, 1136 (S.D. Cal. 2001). A decision under Rule 60(b) is consigned to the court's discretion. *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1100 (9th Cir. 2006).

Rule 60 "does not limit a court's power to . . . set aside a judgment for fraud on the court." FED. R. CIV. P. 60(d)(3). The phrase fraud on the court is read narrowly to mean only that species of fraud

which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. *Appling v. State Farm Mut. Auto. Ins. Co.*, 340 F.3d 769, 780 (9th Cir. 2003). The fraud must be established by clear and convincing evidence. *Id.* (citing *England v. Doyle*, 281 F.2d 304, 309–310 (9th Cir. 1960) (stating that a motion to set aside based on a fraud on the court is addressed to the sound discretion of the trial court and the burden is on the moving party to establish fraud by clear and convincing evidence).

2.   <u>Analysis</u>

Lewis moves for relief from judgment under Rule 60(b)(1), (b)(6), and (d)(3). *See* (Doc. #125 at 4:22). He contends that relief is warranted because the court misconstrued the terms of the various loan documents and guarantees when it adjudicated the Iota Plaintiffs' unopposed Motion for Summary Judgment. Lewis' motion should be denied for five reasons.

First, Lewis waived Rule 60(b)(1) and (b)(6) relief by failing to oppose the Iota Plaintiffs' Motion for Summary Judgment. Lewis was served with a summons and complaint by the Iota Plaintiffs in 2009 and he defended against their claims until March 28, 2012. At that time, Lewis' attorney withdrew from representation and Lewis failed to retain new counsel. On November 28, 2012, Judge Mahan entered summary judgment against Lewis, writing "defendants forwent an opportunity to demonstrate that a factual dispute exists." (Summ. J. Order (#41) at 6:7–8). Judge Mahan also stated that "defendants have failed to comply with a court order requiring defendants to obtain counsel, and have effectively evaded manual service of the instant motions pending before the court. Defendants should not stand to benefit from their disregard of this court's order and evasive behavior." (*Id.* at 7:11–14).

Now, Lewis appears with counsel and attempts to demonstrate that there is a genuine dispute as to the material terms of the various loans documents and guaranties. These arguments were waived; and they

10

provide no basis for Rule 60(b) relief. *Kinross Gold*, 378 F. Supp. 2d at 1288 (stating that a Rule 60 motion "is not an avenue to re-litigate the same issues and arguments upon which the court has already ruled."); *Khan*, 194 F. Supp. 2d at 1136 ("A party cannot have relief under this rule merely because he or she is unhappy with the judgment.").

Second, Lewis' motion is untimely. Summary judgment was entered on November 28, 2012, and the Amended Judgment was entered on April 25, 2014. (Docs. #41, #59). Rule 60(b)(1) and (b)(6) motions "must be made within a reasonable time and . . . no more than a year after the entry of the judgment **or order** or the date of the proceeding." FED. R. CIV. P. 60(c)(1) (emphasis added). Although Lewis styled his motion as a Motion for Relief from Judgment, he really seeks reconsideration of Judge Mahan's summary judgment order. Lewis does not contend that there is an error in Judge Mahan's judgment. Rather, he asserts that Judge Mahan's summary judgment order is mistaken. Lewis' motion presents facts and arguments to oppose the facts and arguments that were presented to Judge Mahan at summary judgment. *See generally* (Doc. #125). The time to make these arguments expired years ago. Lewis provided no satisfactory reason why these arguments were not made earlier. During the court's May 19, 2015, hearing, Lewis' counsel simply stated that his client remembered that he signed a document years ago that purported to limit his personal liability.

Third, Lewis has failed to provide any basis on which the court may consider relief under Rule 60(b)(6). Rule 60(b)(6) permits the court to grant relief for "any other reason that justifies relief." This rule is reserved for extraordinary circumstances. *Ayala v. Los Angeles Police Dept.*, 981 F.2d 1257 (9th Cir. 1992). A mere reiteration of arguments already presented to the court does not satisfy the extraordinary circumstance requirement of Rule 60(b)(6). *See Merozoite v. Thorp*, 52 F.3d 252, 255 (9th Cir. 1995). Extraordinary circumstances include situations such as gross negligence by counsel amounting to virtual abandonment. *See Mackey v. Hoffman*, 682 F.3d 1247, 1251 (9th Cir. 2012). Relief in such a

case is justified because it vitiates the agency relationship that underlies our general policy of attributing to the client the acts of his attorney. *See Id*.

Fourth, Lewis failed to provide any basis on which the court may consider relief under Rule 60(d)(3). Rule 60(d)(3) permits the court to "set aside judgment for fraud on the court." The phrase fraud on the court is read narrowly to mean only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication. *Appling*, 340 F.3d at 780. This argument is frivolous.[8] The Iota Plaintiffs did not obtain their judgment by perpetrating a fraud upon the court; they obtained judgment because Lewis abandoned his defense and there is no genuine issue as to any material fact that Lewis is personally liable for balance of the $70 million loan. *See* (Doc. #41).

Fifth, after considering the merits of Lewis' arguments, the court finds summary judgment would have been granted in the Iota Plaintiffs favor had Lewis raised these arguments at summary judgment. Lewis' motion makes two[9] arguments: (1) the Supplemental Guaranty (a/k/a the "2007 Lewis Guaranty") superseded and replaced the Modification Agreement to the 2004 Guaranty and (2) the Supplemental Guaranty limits Lewis' total liability to $11,365,000. These arguments fail as a matter of law.

---

[8] Lewis is reminded that 28 U.S.C. § 1927 empowers the court to hold an attorney liable for vexatiously multiplying proceedings by raising frivolous arguments and filing meritless motions. The Ninth Circuit has stated that "a finding that an attorney recklessly raised a **frivolous** argument which resulted in the multiplication of the proceedings is also sufficient to impose sanctions under § 1927." *In re Girardi*, 611 F.3d 1027, 1061 (9th Cir. 2010) (emphasis original) (citing *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1107 (9th Cir. 2002); *see also* FED. R. CIV. P. 11. Lewis' "fraud upon the court" argument, as well as his various arguments that he is unable to remember basic details regarding his personal and financial life, are sanctionable.

[9] Lewis made additional arguments regarding the merits of the summary judgment order for the first time in his reply brief. This was improper. *See United States v. Gianelli*, 543 F.3d 1178, 1184 n. 6 (9th Cir. 2008); *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

The Supplemental Guaranty did not supersede or replace the Modification Agreement to the 2004 Guaranty. In support of his argument, Lewis relies on section 3.6 to the Supplemental Guaranty. It states, "[t]his Guaranty, together with the Note, Agreement, the Deeds of Trust, and all other agreements collateral thereto, constitutes the entire agreement and understanding and supersedes all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof." This is an integration clause. It means that the Supplemental Guaranty, as written, "represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." BLACK'S LAW DICTIONARY (10th ed. 2014). This clause is not a general release of liability. It does not release Lewis of his obligations under the various loans and guaranties.

There are two additional reasons why Lewis' argument fails as a matter of law. First, the plain language of the integration clause states that it "supersedes all prior agreements." The Modification Agreement was not a prior agreement. It is a collateral agreement that was executed on the same day by parties with identical interests. Second, the Supplemental Guaranty could not have superseded or replaced the Modification Agreement because the contracts are between different parties. The Supplemental Guaranty was executed by Lewis and AmTrust. The Modification Agreement was executed by Lewis' companies and AmTrust.

This brings the court to Lewis' second basis for seeking relief from the court's judgment. He contends that the Supplemental Guaranty limits Lewis' total liability under all loans and guaranties to $11,365,000. This is incorrect. The Supplemental Guaranty limits Lewis' direct liability on the additional $11,365,000 in loan proceeds to $11,365,000. However, Lewis is indirectly liable for the $70,545,000 provided by the HH INV loan through the Modification Agreement and the Global Guaranty. The Modification Agreement contained a "Consent and Agreement of Guarantors" provision, under which Omega consented to modifying the HH INV loan and agreed that its guaranty of the HH INV loan applies

to the increased balance of $70,545,000. Because Lewis had previously executed the Global Guaranty, under the terms of which agreed to be personally liable for Alpha and Omega's debts, the Modification Agreement rendered Lewis personally liable for $70,545,000.

Therefore, Lewis' Motion for Rule 60 Relief from Judgment should be denied.

**B.     Whether Lewis may Withdraw $15,000 per month from his IRA?**

Next, Lewis moves the court to permit him to withdraw approximately $15,000 per month from his IRA in order to pay his attorney. (Doc. #89 at 3:11). Lewis requests leave of court to withdraw the funds because Judge Mahan enjoined him "from transferring any asset he currently owns which is worth $5,000 or more." (Doc. #65 at 2:9–10). The judgment creditors "generally do not oppose this request." (Doc. #93 at 2:12). They merely move the court to require Lewis "to produce all monthly account statements since December 31, 2009 for the subject IRA and for any other accounts he holds." (*Id.* at 2:12 –15).

 "On motion and just terms, the court may relieve a party or its legal representative" from an order for "any . . . reason that justifies relief." FED. R. CIV. P. 60(b)(6). A party seeking modification or dissolution of an injunction bears the burden of establishing that a significant change in facts or law warrants revision or dissolution of the injunction." *Sharp v. Weston*, 233 F.3d 1166, 1170 (9th Cir. 2000). As stated above, Rule 60(b)(6) relief is reserved for extraordinary circumstances. *Ayala*, 981 F.2d at 1257.

Lewis' motion should be denied. Lewis failed to demonstrate "a significant change in facts or law." *Id.* Judge Mahan enjoined Lewis from transferring any asset that is worth more than $5,000 in order to preserve the judgment creditors' rights and prevent Lewis from avoiding his obligations by transferring funds beyond the judgment creditors' reach. (Doc. #65 at 2:7–8). The fact that Lewis requests a modification of the court order to pay his attorney, rather than transfer funds, is inapposite. The record demonstrates that Lewis is directing his attorney in such a manner that full compliance with the court's

14

orders is not achieved. Under these circumstances, transferring funds in excess of $5,000 to his attorney has the same effect as transferring funds beyond the creditors' reach: both would render the court's judgment "ineffectual." *See* (Injunc. (#65) at 2:8).

The court's injunction, however, should not deprive Lewis of legal counsel or prevent "the just speedy, and inexpensive determination" this proceeding. *See* Fed. R. Civ. P. 1; *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981) (stating that there is no right to counsel in a civil action). The court, therefore, grants the parties leave to submit a stipulation for Judge Mahan's approval that would modify the injunction to permit Lewis to withdraw up to $15,000 per month from his IRA if (1) he or the relevant financial institution produces all monthly account statements from December 31, 2009, through the date on which Lewis' judgment is satisfied for the subject IRA and for any other IRA accounts he holds and (2) Lewis contributes an amount equal to his monthly attorneys' fees towards the judgment for each month he withdraws funds from the IRA in excess of $5,000.

Lewis may refuse to stipulate to these terms. *See* Nev. Rev. Stat. § 21.090(1)(r) (providing a limited exemption for IRA funds from execution). But the court will not permit Lewis to withdraw more than $5,000 for the purpose of retaining counsel to make frivolous arguments, resist properly propounded discovery requests, and avoid satisfying the court's judgment.

### C.   Whether Third-Party Accountants should Produce Lewis' Financial Information?

The parties' filings present a third question: whether the third-party accountants should be compelled to produce documents related to Lewis' finances and his entities' finances? *See* (Docs. #100, #110, #127). The third-party accountants oppose the judgment creditors' requests on several grounds. For the reasons stated below, the court finds that the documents are discoverable and must be produced.

First, Christine Schwab contends that the judgment creditors failed to demonstrate that there postjudgment discovery is permissible. This argument is unavailing. Schwab is a CPA and manger of

15

Lewis-related entities. This connection to Lewis, together with the facts recited above, support a reasonable suspicion that the asset transfers were not made in good faith. *See Rock Bay, LLC v. Dist. Ct.*, 298 P.3d 441, 443 (Nev. 2013) (holding that discovery of a nonparty's assets is permissible under Rule 69 if "the relationship between the judgment debtor and the nonparty raises reasonable suspicion as to the good faith of asset transfers between the two, or in which the nonparty is the alter ego of the judgment debtor.").

Second, Schwab contends that the discovery requests are overly burdensome because the underlying documents should be obtained from the entities themselves, not their accountant. This argument is also unavailing. Corporations can only act through their agents. *See, e.g.*, *Bank of United States v. Dandridge*, 25 U.S. 64, 96 (1827) (citing *Yarborough v. The Bank of England*, (16 East, 6.)) (Marshall, C.J., dissenting). As the corporations' manager, Schwab is an agent of the corporations. Accordingly, as the judgment creditors assert, she has the options of either producing the documents in her independent capacity as the corporations' CPA or producing the documents in her capacity as their agent. This eliminates any undue burden that Schwab would otherwise face because she may shift the burden of the expense of the production onto the corporations.[10]

Third, Schwab and Michael Kern (Lewis' personal accountant) contend that the subpoenaed documents are protected by Nevada's accountant-client privilege. *See* NEV. REV. STAT. § 49.185. The court disagrees. In federal question cases, evidentiary privileges are governed by federal common law. *See* FED. R. EVID. 501; *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona*, 881 F.2d 1486, 1492 (9th Cir. 1989) ("Pursuant to [Rule] 501, federal law governs the availability and scope of the attorney-client

---

[10] Schwab also argues that the judgment creditors' subpoenas are improper because she was subpoenaed in her personal capacity. The judgment creditors concede this point and served corrected subpoenas before the court's May 19, 2015, hearing. This rendered Schwab's argument moot.

16

privilege in nondiversity actions.") (citations omitted). Matters removed to federal court by the FDIC are federal question cases as a matter of law. *Am. Int'l Enter., Inc. v. Fed. Deposit Ins. Corp.*, 3 F.3d 1263, 1267 (9th Cir. 1993) (citing *Buchner v. Fed. Deposit Ins. Corp.*, 981 F.2d 816, 819 (5th Cir. 1993)).

Schwab and Kern contend that state law applies because Rule 69 permits a party to obtain postjudgment discovery "as provided by these rules or by the procedure of the state where the court is located." FED. R. CIV. P. 69(a)(2). This argument is incorrect. Rule 69(a)(2) governs procedure, not rules of evidence. It permits a judgment creditor to obtain postjudgment discovery in accordance with the state or federal rules of civil procedure. *Fed. Deposit. Ins. Corp. v. LeGrand*, 43 F.3d 163, 171–72 (5th Cir. 1995). Rule 69 does not permit a third party or judgment debtor to resist postjudgment discovery by invoking the state court's rules of evidence. *See* FED. R. CIV. P. 69(a)(2).

Fourth, Schwab contends that the subpoenaed documents are protected by the federal tax practitioner-taxpayer privilege created by 26 U.S.C. § 7525. This argument also fails. This is not a tax proceeding; the privilege only apples to tax proceedings. *United States v. Edwards*, 430 F. App'x 625, 626 (9th Cir. 2011); *Chao v. Koresko*, No. 04-3614, 2005 WL 2521886, at *3 (3d Cir. Oct. 12, 2005).

Therefore, the judgment creditors' Motion to Declare Documents Produced by Michael W. Kern Discoverable (#100) and Motion to Compel (#110) are granted; Schwab's Counter Motion for a Protective Order (#127) is denied; and the judgment creditors motion (#100) and reply (#119) are unsealed.

### D.   <u>Whether the Court May Declare Lewis' Home Subject To Execution?</u>

Next, the judgment creditors argue that the court should declare Lewis' home subject to execution. (Doc. #108). Lewis opposes, arguing (1) execution upon the residence is not an available sanction under Rule 37; (2) the home is exempt from execution under Nevada's homestead law; (3) the guaranty agreements exclude the home from execution; and (4) the home was not fraudulently conveyed to a third party. *See* (Doc. #118).

Lewis first contends that the court cannot declare his home subject to execution because execution upon a residence is not an available remedy under Rule 37. Lewis is mistaken. In a pretrial discovery dispute, there is no question that a federal court cannot award a party's home to the opposing party as a discovery sanction. The circumstances are different in the postjudgment context. Rule 37(b)(2)(A) states "[i]f a party or a party's officer, director, or managing agent . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders," including the following: "(i) directing that the matters embraced in the order or other designated fact be taken as established for purpose of the action, as the prevailing party claims; [or] (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." FED. R. CIV. P. 37(b)(2)(A)(i)–(ii).

These provisions, combined with Judge Mahan's amended judgment, empower the court to declare Lewis' home and/or any interest in it subject to execution. Once a judgment has been entered, Rule 69 governs the execution of this judgment. It provides,

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

FED. R. CIV. P. 69(a)(1). In Nevada, a judgment debtor's homestead and dwelling are exempt from execution, *see* NEV. R. STAT. § 21.090(1)(l)–(m) (West), "except as otherwise specifically provided in this section or required by federal law." *Id*. To establish that a homestead is exempt from execution, the judgment debtor must establish that "[1] allodial title has been established and [2] not relinquished and [3] for which a waiver executed pursuant to NRS 115.010 is not applicable." *Id*. To establish that a dwelling is exempt from execution, the judgment debtor must establish that (1) the dwelling is occupied by the judgment debtor as a home for himself or herself and family, (2) the judgment debtor's equity in

the home does not exceed $550,000.00, and (3) the dwelling is situated on lands not owned by the judgment debtor. *Id*.

Lewis is sanctioned under Rule 37(b)(2)(A)(i)–(ii) from demonstrating that his homestead or dwelling is exempt from execution under Nevada law. This renders Lewis' home and/or any interest held in it subject to execution under Rule 69 as a matter of law. Since postjudgment proceedings commenced, Lewis has maintained a series of incredible and conflicting positions with regard to his home in order to frustrate the judgment creditors' execution. He has claimed he does not know who owns the house in which he has lived since 1988 or who pays his property taxes or utilities. He has asserted that he does not own any interest in the home; but that his possession of the home is protected by the Nevada's homestead law. He asserted that he does not own any interest in Five Springs, LLC and Veritas Management, LLC, which are holding companies that allegedly own his home. When ordered to supplement this answer, Lewis stated "[t]he fact that Mr. Lewis and his wife live in this house [, which is owned by Five Springs, LLC and Veritas Management, LLC] does not support the inference suggested that he does in fact have a role or ownership interest in Five Springs, LLC or Veritas Management, LLC." (Doc. #84 at 22:17–22). During the court's May 19, 2015, hearing, Lewis offered a different set of facts, stating that he "has something like a life estate" in the home.

Lewis also asserts that the court cannot declare his home or trust assets subject to execution because the judgment creditors have not identified fraudulent transfers or commenced *in rem* actions in state court against property subject to the judgment in order to execute the judgment. Lewis also contends that the court is without subject-matter jurisdiction to declare that Lewis' assets are subject to the court's judgment or permit the judgment creditors to seize his assets. These arguments are incorrect.[11] Lewis is

---

[11] Federal courts have ancillary jurisdiction in post-judgment execution proceedings to exercise the federal courts' "inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996). "Without jurisdiction to

concealing the truth and frustrating "the just, speedy, and inexpensive determination of every action and proceeding." *See* FED. R. CIV. P. 1.

Rule 37 empowers the court to (1) declare that Lewis' home and/or interest in it is subject to execution under Nevada law and (2) prohibit Lewis from presenting evidence to the contrary. *See* FED. R. CIV. P. 37(b)(2)(A)(i)–(ii). A district court has wide discretion in controlling discovery and imposing sanctions under Rule 37. *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001); *Frank Music Corp. v. Metro–Goldwyn–Mayer, Inc.*, 772 F.2d 505, 515 (9th Cir. 1985) (citing *Reygo Pacific Corp. v. Johnston Pump Co.*, 680 F.2d 647, 649 (9th Cir. 1982). Under these circumstances, it is appropriate to declare Lewis' home and/or interest in it as subject to execution because Lewis has structured his living arrangements to frustrate judicial process. He has refused to disclose the facts regarding the ownership of the home and how he has maintained the right to live there rent free with all expenses paid. This sanction accords with Nevada general policy that statutes specifying the kinds of property that are subject to execution "must be liberally construed" for the judgment creditors' benefit. *See Sportsco Enter. v. Morris*, 112 Nev. 625, 630 (Nev. 1996).

Therefore, the court recommends sanctioning Lewis under Rule 37(b)(2)(A)(i)–(ii) and declaring that Lewis' home is subject to execution under Nevada law and prohibiting Lewis from demonstrating that the asset is exempt from execution under Nevada law. The court also recommends declaring that Lewis' home is subject to execution under each guaranty agreement and prohibiting Lewis from demonstrating that the asset is exempt from execution under any guaranty agreement.

---

enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'" *Id.* (quoting *Riggs v. Johnson Cnty*, 6 Wall 166 (1868)).

**E.       Whether Lewis should be Held in Contempt?**

This brings the court to the final question: whether Lewis should be held in contempt for failing to comply with the court's discovery orders. (Doc. #91). The judgment creditors argue that Lewis should be held in contempt for disregarding the court's order requiring him to produce substantive discovery responses. Lewis contends that no contumacious conduct occurred because Lewis is simply "a gentleman who lacks personal knowledge and/or possession of documents or information that is being sought." (Doc. #95 at 17:5–6).

1.       Legal Standard

Federal Rule of Civil Procedure 37 governs civil contempt in the discovery context. It states that if a party fails to obey an order to provide or permit discovery, the court may treat "as contempt of court the failure to obey any order." FED. R. CIV. P. 37(b)(2)(A)(vii). Civil contempt is designed to compel a party's obedience to a specific and definite court order after that party failed to take all reasonable steps to comply. *GoVideo, Inc. v. Motion Picture Ass'n of Am.*, 10 F.3d 693, 695 (9th Cir. 1993). A judgment debtor's failure to comply with a postjudgment discovery order may be grounds for a contempt sanction. *See Baker v. Limber*, 647 F.2d 912, 919 (9th Cir. 1981).

The civil contempt power of a magistrate judge is limited by 28 U.S.C. § 636(e). *See Aldridge v. Young*, 782 F. Supp. 1457, 1458 (D. Nev. 1991). Section 636(e) provides that where,

> the act constitutes a civil contempt, the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified.

28 U.S.C. § 636(e)(6)(B)(iii) (2013). The assigned district judge then hears the evidence to determine whether the conduct warrants punishment. The district judge may impose contempt sanctions in the same

manner and to the same extent as for a contempt committed before the district judge himself. *See id.*; *see also In re Kitterman*, 696 F. Supp. 1366, 1370 (D. Nev. 1988).

"A court has wide latitude in determining whether there has been contemptuous defiance of its order." *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984). The movant bears the burden of showing by clear and convincing evidence that the nonmoving party violated a specific and definite order of the court. *Fed. Trade Comm'n v. Enforma Nat. Prods.*, Inc., 362 F.3d 1204, 1211 (9th Cir. 2004). If the moving party satisfies its burden of production, the burden then shifts to the nonmoving party to demonstrate why compliance could not be achieved. *Id.*

While contempt "need not be willful," a party should not be held in contempt if their actions "appear to be based on good faith and a reasonable interpretation of the court's order." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993). A finding of contempt is not appropriate where the contemnors have taken "all reasonable steps" to comply with the court's order. *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992).

### 2.  Analysis

The judgment creditors contend that Lewis failed to comply with the court's order regarding ten requests.[12] In response, Lewis argues that discovery is ongoing and he is simply "a gentleman who lacks personal knowledge and/or possession of documents or information that is being sought." (Doc. #95 at 17:5–6). Lewis' argument is unpersuasive.

On December 18, 2014, the court rejected Lewis' various arguments regarding his purported ignorance regarding the basic details of his life. The court stated:

> [I]nterrogatory [24] asks Lewis to describe his interest and role in Five Springs, LLC and Veritas Management, LLC. Lewis answered "none," and now asserts "[t]he fact that Mr. Lewis and his wife live in this house [, which is owned by Five Springs, LLC and Veritas

---

[12] The requests are interrogatories 15, 17, 18, and 24, and document requests 1, 2, 3, 7, 15, and 16.

Management, LLC] does not support the inference suggested that he does in fact have a role or ownership interest in Five Springs, LLC or Veritas Management, LLC." ¶ These answers are not credible. Lewis' continued presence in the home after its transfer provides an ample basis for inferring that Lewis may have an interest in Five Springs, LLC or Veritas Management, LLC.[13]

(Doc. #88 at 7:16–15). Lewis has now doubled down on this position. Rather than providing the judgment creditors with substantive answers, he argues that he cannot because (1) "being a land and residential developer there were literally hundreds if not thousands of transfers," (2) he "has no documents of how [The Caribbean Trust Company, which holds Lewis' assets] has handled the transferred assets since 2008," (3) he "still is not in possession of the documents regarding utilities, etc. pertaining to the house in which he lives," (4) "[t]he best evidence of . . . any interest or responsibility Mr. Lewis is the trust document itself," (5) "Mr. Lewis does not presently have any bank accounts and has no statements," and (6) "Mr. Lewis does not believe after searching that he has any of the organizational documents for any of the 75 entities" with which he is associated. *See* (Doc. #95 at 8:5, 15:6, 15:11, 15:21–22, 16:5, 16:12–13).

As the court previously stated, "[t]hese answers are not credible." *See Fed. Trade Comm'n v. Affordable Media*, 179 F.3d 1228, 1241 (9th Cir. 1999) ("While it is possible that a rational person would send millions of dollars overseas and retain absolutely no control over the assets, we share the district court's skepticism."). Lewis' feigned ignorance constitutes contumacious conduct. *See Baker*, 647 F.2d at 919 (stating that a judgment debtor's failure to comply with a postjudgment discovery order may be grounds for a contempt sanction). The court ordered Lewis to conduct a reasonable inquiry regarding the location of his assets and the companies with which he is affiliated and produce responsive

---

[13] During the court's May 19, 2015, hearing, Lewis changed his position and stated that he has "something like a life estate" in his home.

information. *See* (Doc. #88 at 8:19). Lewis failed to substantially comply with the court's order or provide a credible basis for his inability to comply with the court's order.

During the court's May 19, 2015, hearing, Lewis stated that he is unable to remember or determine which entities he transacted with because his home development companies created an LLC for each home that Lewis developed. It is unnecessary for the court to remind Lewis that the judgment creditors are not interested in LLCs that Lewis or his companies created to manufacture and sell homes. The judgment creditors are seeking information regarding entities that hold or held assets that are subject to execution.

Lewis' oral argument demonstrates that he is able to remember the name of these entities, where they are located, and the value of their assets. Although Lewis has maintained that he is simply "a gentleman who lacks personal knowledge and/or possession of documents or information that is being sought," (Doc. #95 at 17:5–6), he conceded at oral argument that he remembers provisions of loan documents, contracts, and guaranties that were executed over a decade ago. Lewis stated that he moved for Rule 60 relief because he remembered signing the Supplemental Guaranty in 2004, which contained a provision limiting his liability. This admission discredits Lewis' assertion that he is forgetful. (Doc. #95 at 17:5–6). Lewis stated that he remembers reading provisions of the Supplemental Guaranty in 2004. This admission provides convincing evidence that Lewis is not forgetful and is willfully violating the court's orders.

The court finds that Lewis is engaging in contumacious conduct. Nonetheless, the court denies the judgment creditors' motion with leave to renew and grants Lewis one last chance to provide full and complete discovery responses. In order to eliminate any doubt or ambiguity regarding what information the judgment creditors what to obtain, the court orders the parties to meet and confer and identify outstanding discovery requests. The parties are further ordered to meet and confer with F.R. Jenkins to obtain any and all information the judgment creditors seek in order to execute their judgment. The parties

24

are further ordered to file a status report within thirty days. The judgment creditors are granted leave to renew their Motion to Hold Rex Lewis in Contempt after the court's June 30, 2015 status conference.

ACCORDINGLY, and for good cause shown,

## RECOMMENDATION

IT IS RECOMMENDED that Rex Lewis' Motion for Relief from Judgment (#125) be DENIED.

IT IS FURTHER RECOMMENDED that Rex Lewis' Motion to Withdraw Funds from his IRA be DENIED. The parties are granted leave to submit a STIPULATION for Judge Mahan's approval that would modify the injunction to permit Lewis to withdraw up to $15,000 per month from his IRA if (1) he or the relevant financial institution produces all monthly account statements from December 31, 2009, through the date on which Lewis' judgment is satisfied for the subject IRA and for any other accounts he holds and (2) Lewis contributes an amount equal to his monthly attorneys' fees towards the judgment for each month he withdraws funds from the IRA in excess of $5,000.

IT IS SO RECOMMENDED.

## ORDER

IT IS ORDERED that the judgment creditors' Motion to Rex Lewis in Contempt be DENIED with leave to renew. The parties are ordered to meet and confer and identify outstanding discovery requests. The parties are further ordered to meet and confer with F.R. Jenkins, Esq. to obtain any and all information the judgment creditors seek in order to execute their judgment. The parties are further ordered to file a status report within thirty days. The judgment creditors are granted leave to renew their Motion to Hold Rex Lewis in Contempt after June 30, 2015.

IT IS FURTHER ORDERED that the judgment creditors' Motion to Declare Documents Discoverable (#100) is GRANTED.

IT IS FURTHER ORDERED that the judgment creditors' motion (#100) and reply (#119) are UNSEALED.

IT IS FURTHER ORDERED that the judgment creditors' Motion to Compel (#110) is GRANTED.

IT IS FURTHER ORDERED that Non-Party Christine Schwab's Motion for a Protective Order (#127) is DENIED.

IT IS FURTHER ORDERED that the Judgment creditors' Ex Parte Motion for Service (#136) is DENIED as moot.

IT IS FURTHER ORDERED that a STATUS CONFERENCE is set for June 30, 2015, at 3:00 p.m. in Courtroom 3D. If the judgment creditors are satisfied that Lewis has complied with this order by June 30, 2015, they may file a motion to vacate the status conference.

IT IS SO ORDERED.

DATED this 29th day of May, 2015.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE