# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\*\*\*

FDIC as Receiver for AMTRUST BANK, f/k/a Ohio Savings Bank, a federal savings bank, *et al.*,

Plaintiffs,

vs.

REX H. LEWIS, an individual, *et al.*,

Defendants.

Case No. 2:10–cv–00439–JCM–VCF

**ORDER TO SHOW CAUSE AND CERTIFICATION OF FACTS**

RENEWED MOTION FOR AN ORDER HOLDING JUDGMENT DEBTOR REX LEWIS IN CONTEMPT (ECF NO. 261)

Before the Court is Iota Violet, LLC; Iota Coral, LLC; Iota Cinnamon, LLC; Iota Red, LLC; and Iota Royal, LLC's ("the Iota Entities") Renewed Motion for an Order Holding Judgment Debtor Rex Lewis in Contempt. (ECF No. 261). Pursuant to 28 U.S.C. § 636(e)(6)(iii),[1] Magistrate Judge Ferenbach certifies the following facts to the Honorable District Judge Mahan:

I. **Case Background**

1. The Court has entered judgment in favor of the Iota Entities and against Rex Lewis and several associated entities for over $59 million. (ECF No. 59). The Iota Entities have sought discovery from Lewis to enable their execution of judgment.

2. On May 29, 2015, the Court issued an order finding "that Lewis is engaging in contumacious conduct" during this discovery but denying a motion for contempt "with leave to renew and grant[ing] Lewis one last chance to provide full and complete discovery responses." (ECF No.

---

[1] 28 U.S.C. 636(e)(6)(iii) provides that in a case where an act constituting civil contempt is alleged to take place, "the magistrate judge shall forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified."

1

146). The Order directed the parties to hold further meet and confers regarding Lewis's discovery duties. (*Id.*)

3. The Iota Entities' subsequent discovery has identified different trusts, accounts, and businesses associated with Lewis. For the purpose of this certification of facts, the Court will focus on the trust and bank accounts at issue in the renewed motion to hold Lewis in contempt.

## II. The Holder Trust

1. On September 25, 2008, Rex Lewis became a settlor of the Lewis APT 2008 Trust ("the Holder Trust") in his individual capacity and as a co-trustee of the Lewis Trust 1988. (Ex. E1).[2] The Holder Trust is located in St. Vincent and the Grenadines. (*Id.*)

2. Lewis, as a co-trustee of the Lewis Trust 1988, was also an original beneficiary of the Holder Trust. (*Id.* at 32). The Lewis Trust 1988 was removed as a beneficiary on July 12, 2012 with the approval of Lewis as a settlor. (Ex. E5). The Lewis Trust 1988 was reinstated as a beneficiary on December 10, 2013 (Ex. E9) and again removed[3] on August 28, 2014 (Ex. E6).

3. Lewis testified at the October 16, 2017 hearing ("the hearing") that he and his attorney, Ron Jenkins, created the Holder Trust because they were concerned about the U.S. Senate altering how offshore trusts could be structured and how the trusts would have to be reported.

4. The Holder Trust deed contains a provision that the trustee cannot reveal documents regarding the trust to any person or entity except to the settlors and beneficiaries. (Ex. E1 at 27). That provision is subject to another clause—Clause 43—that states to the extent a person has the authority to direct action by the trustee, the trustee is "to accept or recognize only instructions

---

[2] Exhibit numbers refer to exhibits introduced at the October 17, 2017 hearing before Magistrate Judge Ferenbach.

[3] The settlors did not approve this removal of beneficiaries as required in the Holder Trust deed (E1 32), but this appears to have been an oversight.

2

or advice…which are given by or are the result of persons acting of their own free will and not under compulsion of any legal process or like authority." (*Id.*)

5. The Holder Trust defines the "Memorandum of Settlors" as "the document by the same name executed by the Settlors and delivered to the Original Trustees on the date this deed is executed by the Settlors." (*Id.* at 4). The Memorandum of Settlors would name an investment advisor and appoint a protector. (*Id.* at 3, 13, 26). In addition, "the trustees shall distribute income generated on the Trust Assets in accordance with the directions set forth in the Memorandum of Settlors delivered to the Original Trustees by the Settlors at the settlement of this Trust, as it may be modified by the Settlors from time to time." (*Id.* at 10).

6. To date, there has been no evidence of a Memorandum of Settlors dated other than December 2, 2011. In the December 2, 2011 Memorandum of Settlors, Lewis, acting as a settlor, appointed a protector for the Holder Trust. (Ex. E3).

7. Because there had been no protector originally appointed, the settlors and beneficiaries (Lewis and his wife) changed trustees for the Holder Trust on December 31, 2008.

8. Lewis testified at the hearing that his consideration for transferring personal assets to the Holder Trust, and thus losing control over them, was asset protection.

### III. **Bank Accounts at Issue**

1. The JPMorgan Chase account ending in 6008 was transferred from the Lewis Trust 1988 to the Holder Trust on September 30, 2008. (Ex. B15 at 8; ECF No. 264-13). Lewis was listed as the holder of the account until the account was closed in September 2011. (Ex. H3). Lewis testified at the hearing that he did not know he was listed on the account after the September 2008 assignment until he saw the account documents produced in this litigation. There is no evidence that Lewis accessed the account after the September 2008 assignment.

2. The Wells Fargo account ending in 0404 is a personal account that is still in use as of June 2016. (Ex. I4). Lewi's wife is listed as the holder, though Lewis has made deposits from his First Savings Bank IRA into the account and his signature appears on some of the bank documents. (Ex. B18 at 6, I3).

3. The Wells Fargo account ending in 7736 was an account held by the Lewis Trust 1988 used to make transfers to the Holder Trust. (Ex. B15 at 12-15, Ex J4). The account closed in July of 2014. (Ex. J4 at 359).

4. The US Bank account ending in 0466 was held by RHL Financial, which Lewis owned, and was used to make transfers to the Holder Trust. (Ex. B15 at 16-17, B18 at 6, Ex. K3). The account closed in December of 2011. (Ex. K3 at 63).

## IV. Discovery Procedure

1. On June 5, 2015, counsel for the Iota Entities sent Lewis a letter asking for a description of Lewis's role in the Holder Trust, a full accounting of the assets held by the Holder Trust, documents relating to the formation of the Holder Trust (specifically mentioning the Memorandum of Settlors), and all monthly statements for any account held by Lewis from December 31, 2009 through 2013. (EX. C1).

2. On June 8, 2015, Lewis sent letters to the protector and trustee for the Holder Trust, stating he was "under a US District Court order to provide information regarding assets formerly owned by" him, requesting information regarding the Holder Trust, and directing that if they needed to contact him "please do so in writing…so all communication is documented for the Court's benefit."[4] (Ex. D1, D6). The protector responded on June 20, 2015, stating he did not have

---

[4] The Court notes that emails are perfectly acceptable ways to document communications for the Court's benefit. (*See* Ex. G).

authority to release the information and "[a]ny request for information should be directed to the Trustee." (Ex. D8). The protector cc'd the trustee "via email." (*Id.*) The trustee is located in St. Vincent and the Grenadines. (Ex. D6). Lewis did not receive a response to his letter to the trustee. Lewis failed to take any action to follow up with the trustee. Lewis did not attempt to contact the trustee through any other means such as a phone call or email.

3. On June 9 and 15, 2015 Lewis sent letters to JPMorgan Chase, Bank of Nevada, and Wells Fargo Bank "seeking information regarding any account [he, his wife, or the Lewis Trust 1988] may have had with your institution" during the relevant time frame. (Ex. D2, D3, D5). The letters do not list any bank account information or mention any US District Court order. Lewis did not receive a response to any of these letters.

4. On June 24 and 29, 2015, Lewis served supplemental responses to the discovery requests. (Ex. B15, B16, B17). In response to requests regarding bank accounts, Lewis cross-referenced statements previously produced by banks and produced some supplemental documentation for "the Wells Fargo retirement account." (Ex. B15 at 44). In response to requests for Holder Trust documentation, Lewis cross-referenced documents previously produced by Ron Jenkins and stated he was seeking the cooperation of the Holder Trust trustee in obtaining other documents. (*Id.* at 47-48). Throughout his responses, Lewis relies more on cross-referencing previously produced information than providing new information. (*See id.* at 5-21; Ex. B17 at 5-22).

5. On July 27, 2015, counsel for the Iota Entities sent another letter to Lewis asking for a full accounting and other financial documents from the Holder Trust, documents relating to the formation of the Holder Trust, and monthly statements from 2009 to 2013 of the 6008

JPMorgan, 0404 Wells Fargo, 7736 Wells Fargo, and 0466 US Bank accounts. (Ex. C2). The listed account number for the 7736 Wells Fargo account contains a typo in this letter. (*Id.*)

6. Lewis did not send another letter to the Holder Trust trustee.

7. On July 27, 2015, Lewis sent letters to JPMorgan Chase, US Bank, and Wells Fargo Bank. (Ex. D9). The letters to JPMorgan and US Bank list the account numbers and state Lewis is seeking information regarding the accounts, but fail to state that the accounts belonged to Lewis, his wife, or the Lewis Trust 1988. (*Id.* at 1-2). The letter to Wells Fargo lists the account number with the typo contained in the July 27 Iota Entities' letter and states it is an account "which I may have had with your institution." (*Id.* at 3). Lewis did not receive a response to any of these letters.

8. At the hearing, Lewis testified for the first time that he visited at least one of these banks in person and called the bank, but the bank was not cooperative because the bank seemed to think it was a scam. There is no other evidence of a call or in-visit person to these banks. Lewis also testified he has never used online banking methods.

9. On August 14 and 31, 2015, Lewis served supplemental responses to the discovery requests. (Ex. B18, B19). Lewis asserted he "does not have the right to direct Holder Trust or its subsidiaries to produce documents, but has in writing requested cooperation of these entities." (Ex. B18 at 5, 8). Lewis generally stated he did not have access to trust documents beyond those produced by other parties. (*Id.* at 10-19). Lewis referenced the letters written to the banks to obtain account information but stated no information was forthcoming except for approximately 93 pages related to the 0466 US Bank account. (*Id.* at 7-8).

10. On March 23, 2016, the Iota Entities served a subpoena on JPMorgan for records relating to the 6008 account. (Ex. H1).

11. On May 26, 2016, Iota Entities served a subpoena on Wells Fargo for records relating to the 7736 and 0404 accounts. (Ex. I1).

12. On June 23, 2017, the Iota Entities filed a renewed motion to hold Lewis in contempt. (ECF No. 261).

13. On August 28, 2017, Lewis served supplemental responses to the discovery requests, where he added approximately 84 pages of documents regarding the Wells Fargo 0404 account. (Ex. B20 at 5).

14. On October 16, 2017, the Court held an evidentiary hearing on the renewed motion for contempt.

15. The Iota Entities stated that all relevant information regarding the bank accounts at issue has now been obtained. The Iota Entities served four subpoenas to the banks, including two in February and May of 2015 (Ex. J1, K1) before the Court issued its Order directing further discovery from Lewis (ECF No. 146).

16. The Iota Entities testified that there are still documents regarding the Holder Trust that Lewis has failed to produce, including the original Memorandum of Settlors, due diligence reports, ledgers, balance, sheets, and correspondences between Lewis and the trustee regarding major transfers.

17. Lewis testified at the hearing that he did not keep any documentation from the Holder Trust and relied on Ron Jenkins to keep records.

18. Lewis testified at the hearing that he had no involvement managing the trust after he helped form it in 2008. The Court notes that Lewis was involved in the management of the Holder Trust in 2011 when he appointed a protector and 2012 when he removed himself as a beneficiary from the Holder Trust. (Ex. E3, E5).

19. Lewis testified at the hearing that he had no memory of a Memorandum of Settlors from September 25, 2008 and Jenkins would have it if one existed.

20. When asked whether Lewis could have taken further actions to get information from the Holder Trust under different circumstances, such as to help a family member, Lewis's counsel failed to directly answer the question. He stated that it was clearly the intention of the trust to have settlors be able to direct distribution, indicating that the settlors should be able to contact the trustee and receive a response. Lewis's counsel acknowledged that Clause 43, directing the trustee to in effect ignore requests made as a result of a court order, was a problem in this case and was the most logical reason why the Holder Trust was not cooperating.

## V. <u>**Findings by the Magistrate Judge**</u>

1. Lewis had the ability to comply with the Court's order that he provide full discovery regarding the Holder Trust. Lewis has control over the documents held by the Holder Trust that the Iota Entities are seeking. Based on the language of the trust deed and the testimony by Lewis' counsel, the Holder Trust trustee can produce documents to settlors upon request.

2. Lewis failed to make a good faith effort to obtain the Holder Trust documents at issue. *See F.T.C. v. Affordable Media*, 179 F.3d 1228, 1241-42 (9th Cir. 1999) ("In the asset protection trust context, moreover, the burden on the party asserting an impossibility defense will be particularly high because of the likelihood that any attempted compliance with the court's orders will be merely a charade rather than a good faith effort to comply.").

3. Lewis's letters to the Holder Trust trustee were written with the intent to frustrate discovery in this case rather than as a good-faith effort to comply with the Court's order. Lewis began the letter by highlighting he was "under a US District Court order" (a fact notably missing from any communication with the banks), thereby ensuring Clause 43 would be triggered. Lewis

8

requested that any response be in writing "for the Court's benefit," though the Court can clearly accept emails into evidence. Because the trustee is located in St. Vincent and the Grenadines, this request would impede any response.

4. In addition, Lewis failed to take reasonable steps to follow up with the trustee. Lewis did not send a second letter similar to the steps he took communicating with the banks. Lewis did not call or email the trustee, despite seeing that the protector cc'd the trustee "via email" on his response to Lewis's letter.

5. Lewis had control over the documents relating to the Wells Fargo 0404 account, Wells Fargo 7736 account, and US Bank 0466 account that the Iota Entities sought. Lewis was intimately involved in each account during the relevant time frame.

6. Lewis's communications with Wells Fargo and US Bank could not reasonably be expected to produce any substantive response. The first communication to Wells Fargo asked for any accounts Lewis, his wife, or the Lewis Trust 1988 may have had with Wells Fargo and failed to include any account information or details. The first letter to US Bank included an account number but failed to state that the account belonged to an entity that Lewis owned. The second letter to Wells Fargo contains a typo regarding the account number. While this typo was provided in the Iota Entities' discovery request, it is suspicious that the only letter with a typo in the account number was also the only letter sent out July 27, 2015 that mentioned it was an account "which [Lewis] may have had with your institution."

7. There is insufficient evidence to find that Lewis visited these banks in person or called the banks.

8. Lewis did not have direct control over the documents relating to the JPMorgan 6008 account that the Iota Entities sought. While Lewis was listed as a holder on the account during the

9

relevant timeframe, he had assigned the account to the Holder Trust in 2008. There is no evidence that Lewis knew he was still listed on the account after the 2008 transfer.

ACCORDINGLY, and for good cause shown,

IT IS HEREBY ORDERED that Rex Lewis must appear before the Honorable District Judge Mahan to show cause why he should not be adjudged in contempt by reason of the facts so certified. The date of the hearing will be set by Judge Mahan's chambers.

IT IS SO ORDERED.

DATED this 24th day of October, 2017.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE